F I L E D
Clerk
District Court
DEC 04 2017
for the Northern Mariana Islands
By_____
(Deputy Clerk)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| SIN HO NAM, WINNERSLIFE, INC., f/k/a SIN HO NAM DEVELOPMENT, INC., and DAN BI CHOI, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, DIEGO CAMACHO BLANCO, in his capacity as chairman of the Commonwealth Zoning Board, and DOES 1 THROUGH 5,<br><br>Defendants. | Case No.: 17-cv-00021<br><br>**DECISION AND ORDER DENYING PLAINTIFFS' REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, AND GRANTING DEFENDANTS' MOTION TO DISMISS** |

## I. INTRODUCTION

In this removal action, Plaintiffs Sin Ho Nam, Winnerslife, Inc., and Dan Bi Choi, LLC, originally filed suit in the Commonwealth Superior Court. (Notice of Removal, ECF No. 1.) Defendants removed the action to this Court on the basis that it has jurisdiction under 28. U.S.C. § 1331 due to the alleged violation of Plaintiffs' substantive due process rights under the U.S. Constitution. (*Id.*) Plaintiffs claim that Defendants violated their due process rights under the U.S. Constitution and Commonwealth Constitution due to a zoning law requiring them to move their gambling business to a designated area or be fined or otherwise sanctioned for every day in which they are in violation of the law. They seek a declaration that the statute violates their due process rights and an order granting permanent injunctive relief. (Compl., ECF No. 1-2.)

1

Presently before the Court is Plaintiffs' motion for a temporary restraining order ("TRO") or preliminary injunction. (Motion, ECF No. 2-1.) The motion has been fully briefed[1] and the Court heard argument on November 28, 2017. Also pending before the Court is Defendants' motion to dismiss the complaint for lack of ripeness and failure to exhaust administrative remedies. (ECF No. 10.) Plaintiffs have filed their opposition brief. (ECF No. 13.) Having reviewed the motion to dismiss and the response, the Court will decide them on the briefs as they raise substantially similar arguments to those in the briefs relating to Plaintiffs' motion for a TRO or preliminary injunction. (*See* LR 7.1(a)(2).)

For the reasons discussed below, Plaintiffs' request for a TRO or preliminary injunction is DENIED, and because Plaintiffs' claims are not ripe the complaint is DISMISSED WITHOUT PREJUDICE.

## II.     BACKGROUND

Plaintiff Sin Ho Nam is a Korean national who holds an E-2C visa that permits him to invest in the CNMI. (Compl. ¶¶ 3–4, ECF No. 1-2.) Since December 2007, Nam has operated Sin Ho Development, Inc., now known as Winnerslife, Inc., to conduct business operations. (*Id*. ¶¶ 5, 7.) Winnerslife holds a non-transferable license to carry out commercial poker operations, and nineteen (19) licenses for the poker machines in Fina Sisu and Kagman. (*Id*. ¶¶ 8–9.) The business license expires on January 1, 2018, and the licenses for each individual poker machine expires at some time in 2018. (*Id*. ¶¶ 52–53.)

---

[1] Motion, ECF 2-1; Opposition Brief, ECF No. 8; Reply Brief, ECF No. 12.

Plaintiff Dan Bi Choi, LLC is a company that holds a business license in the CNMI to operate poker machines, and particularly a license to operate poker machines owned and licensed by Winnerslife in Fina Sisu and Kagman. Dan Bi Choi, LLC's business license expires on June 29, 2018. (*Id*. at ¶¶ 11–13.) At the November 28, 2017, hearing, counsel for Plaintiffs described Dan Bi Choi, LLC as a manager for Winnerslife.

These three Plaintiffs challenge the effect of several Saipan zoning laws enacted in 2013 and thereafter. The first and primary law was passed on October 25, 2013, by the Saipan and Northern Islands Legislative Delegation (SNILD) as Saipan Local Law No. 18-05, which amended the Saipan Zoning Law, S.L.L. No. 108-04, by requiring all "legally established adult gambling machine business[es]" to be located in "the Adult Business Park, Tourist Resort, Mixed Commercial, Garapan Core, Garapan East, or Beach Road Zoning Districts." S.L.L. 18-05, sec. 4 (adding Section 1210 to Saipan Zoning Law of 2013). Under this law, all adult gambling machine businesses outside of these designated areas will be considered nonconforming, and "[w]ithin four years of the effective date of [the] Law, at the end of the last full renewal period of" the license, must relocate to be in conformance. *Id*. (sec. 1210(a), (b)). However, any business may apply for an extension of the four-year deadline "to allow for amortization of the business investment" until "six months prior to the above date." *Id*. (sec. 1210(b)(1)). The Zoning Board may, in its discretion, approve the extension if it finds the business "is (1) lawfully established," (2) "is not a public nuisance," and (3) "will be unable to recoup the value of the investment . . . made after the effective date of this law." *Id*. (sec. 1210(b)(2)). The Zoning Board is empowered to adopt regulations to "implement the elimination of nonconforming adult gambling machine businesses." *Id*. (sec. 1210(c)). According to a press release, the Zoning

Board has decided that it will impose a $1,000 per day fine on all entities out of conformance after the four-year period lapses. Plaintiffs stated at the November 28, 2017, hearing that no regulations to implement this fine or to otherwise enforce the zoning law have been adopted.

The Commonwealth Legislature subsequently introduced and passed Public Law 18-38, which was signed into law on March 21, 2014. Public Law 18-38 (later repealed and reenacted in its entirety by Public Law 18-43) established casino gaming on Saipan and foreclosed the issuance of new or additional licenses for poker machines to be operated outside of the approved casino establishment, hotel, or La Fiesta within Saipan's Third Senatorial District. A grandfather provision allows licenses issued for poker machines prior to April 2, 2015, to continue operation. Defendants argue the greatest impact this provision would have on Plaintiffs is that if their licenses were revoked or not renewed, they would be unable to start a brand-new poker establishment. (Opposition 4, ECF No. 8.)

Plaintiffs argue that the new zoning laws violate their due process rights under the Fifth and Fourteenth Amendments of the U.S. Constitution, and under Article I, sections 5 and 6 of the Commonwealth Constitution.[2] (Compl. ¶¶ 34, 44.) The Court understands Plaintiffs to assert that the zoning laws violate their substantive due process rights, as opposed to procedural due process rights, because Plaintiffs construe the laws as invalidating their constitutionally protected property rights to their business and gaming machine licenses. (*See, e.g.*, *id.* ¶ 36, 44.) Specifically, Nam, Winnerslife, and Dan Bi Choi, LLC hold gaming machine licenses and business licenses that permit the operation

---

[2] Article I, section 6 of the Commonwealth Constitution guarantees equal protection of the laws, and prohibits the government from discriminating against a person on account of race, color, religion, ancestry or sex. Although Plaintiffs cited this section in the complaint, they did not assert an equal protection violation, and the Court will therefore consider only the due process claim asserted.

4

of the duly licensed machines in Kagman and Fina Sisu through the end of 2018. In their first claim for relief, they argue that application of S.L.L. 18-05 will deprive them of a property interest in their business license and licenses for the poker machines without due process of law. (*Id.* ¶ 48.) Furthermore, in their second claim for relief, Nam claims that he will lose his E-2C investor status, in which he has a property right, if he does not invest substantial sums in obtaining infrastructure and property development in conforming areas, which will case "significant hardship." (*Id.* ¶ 58.)

### III. LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The standard for obtaining a temporary restraining order is the same as for obtaining a preliminary injunction. *Quiroga v. Chen*, 735 F. Supp. 2d 1226, 1228 (D. Nev. 2010).

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a pleading "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). In other words, the pleading must contain "more than labels and conclusions"; the "[f]actual allegations must be enough to raise a right to relief above a speculative level." *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). Thus, a court must "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then consider whether the well-

5

pleaded allegations could "plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 678–79). If the well-pleaded allegations "are merely consistent with a defendant's liability," the plausibility threshold has not been satisfied. *Id.* (quoting *Iqbal*, 556 U.S. at 678.) But "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### IV.  ANALYSIS

Plaintiffs seek a temporary restraining order or a preliminary injunction, arguing that the zoning laws deprive them of their property—business licenses, licenses to operate adult gambling machines, and Nam's E-2C visa—without due process of law under the U.S. and Commonwealth Constitutions. Defendants, on the other hand, argue that the statute creates a process through which Plaintiffs could seek an extension of their licenses and because they have failed to use it, their claims are not ripe for review and unexhausted. Thus, Defendants contend, Plaintiffs are not entitled to an injunction or TRO, and the Court should dismiss the complaint. (Opposition 9; Motion to Dismiss, ECF No. 10.)

To determine ripeness, a court must evaluate the constitutional component and a prudential component. First, under Article III of the U.S. Constitution, a court may hear only a case or controversy, and must consider "whether the plaintiffs face 'a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement' . . . or whether the alleged injury is too 'imaginary' or 'speculative' to support jurisdiction." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (internal citations omitted).) When plaintiffs assert they are genuinely threatened with prosecution, a court looks to "whether the plaintiffs have articulated a

'concrete plan' to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement." *Id*. at 1139. Next, a court must consider the prudential aspects of ripeness: (1) the "fitness of the issues for judicial decision" and (2) the "hardship to the parties of withholding court consideration." *Id*. at 1141 (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967)). "A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009) (quoting *U.S. W. Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999)). "To meet the hardship requirement, a litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss." *Id*.

### *Constitutional Prong*

With respect to the constitutional inquiry, it is unclear whether Plaintiffs intend to violate the zoning law. Although Plaintiffs have not relocated as of the issuance of this order, Nam has requested an extension from the Zoning Board of his companies' ability to operate in a nonconforming zone and made efforts to identify a new location for its business. (*See* Letter to Zoning Board Chairman Blanco, ECF No. 12-1.)

Furthermore, the parties agree that, with respect to the licenses for the poker machines, the Zoning Board has not yet sought to bring an enforcement action against Plaintiffs for operating in a nonconforming area. However, Plaintiffs argue that the "imminence of direct injury is certain" because the government has issued press releases "threatening poker operators who do not or cannot relocate with substantial fines and the loss of their licenses." (Reply Br. 6–7, ECF No. 12.) The

issuance of press releases is insufficient to establish that a specific warning has been made. Plaintiffs do not claim that they were singled out or named in the releases or even indicate when the press releases were issued. Further, because the press releases were not attached by the parties, the Court cannot determine whether the contents were an overview of the regulatory scheme or direct threats to a specific operator. Moreover, Plaintiffs acknowledge that the Zoning Board has yet to adopt any regulations to implement or enforce the law. Even if the Board intends to enforce the law in the future, as Defendants conceded at the November 28 hearing, the timing and method of enforcement is too vague and uncertain for the Court to conclude the threat of enforcement is imminent or certain.

The case relied on by Plaintiffs, *City of Auburn v. Qwest Corporation*, to establish ripeness is not persuasive. (Reply 6, ECF No. 12.) In *Qwest Corporation*, several municipalities passed ordinances regulating how utilities could establish franchises "to manage telecommunications facilities in rights-of-way." 260 F.3d 1160, 1166 (9th Cir. 2001). The cities brought suit against Qwest in state court for using the public rights-of-way, claiming Qwest was required by the ordinances to relocate or pay for relocation of its facilities. *Id*. Qwest counterclaimed that the ordinances were preempted and removed the case to federal court. *Id*. In addressing whether Qwest's counterclaim was ripe, the Ninth Circuit stated, "[i]f promulgation of the challenged regulations present[s] plaintiffs with the immediate dilemma to choose between complying with newly imposed, disadvantageous restrictions and risking serious penalties for violation, the controversy is ripe." *Id*. at 1171. Applying this principle, the court held that the counterclaim was ripe because "[t]here can be no question that Qwest is violating the ordinances—it owns and maintains facilities in the Cities' rights-of-way, and neither possesses nor has applied for a franchise." *Id*. at 1172. "Only an about-face by the

8

Counterclaim Cities would save Qwest from civil or criminal penalties" and therefore Qwest was in "realistic danger of sustaining a direct injury." *Id.*

In stark contrast, Plaintiffs are not facing a "realistic danger of sustaining a direct injury" that would satisfy the constitutional component of ripeness. Here, the zoning laws at issue provide a safety valve that will allow an entity operating in a nonconforming zone to avoid civil fines or other sanctions. Any entity may apply for an extension of its existing license while it assesses where and how to relocate to a conforming zone. S.L.L. 18-05, sec. 4 (sec. 1210(b)(1)). And Plaintiffs have done just that, unlike Qwest, which did not apply for a franchise license. Whether the Zoning Board will approve an extension is uncertain as no decision or response has been received at this time, indicating that Plaintiffs' alleged injury is too speculative to satisfy the "case or controversy" requirement.

Finally, Plaintiffs' argument that they may not begin a new poker business if their licenses are revoked due to Public Law 18-38 does not establish ripeness. (Motion 6.) Any injury is speculative at best. This is evident by the very language of the verified complaint: "*Unless* Mr. Nam, Winnerslife, and every other owner impacted . . . invest in a new location for their business operations, they will not be able to transfer their amusement machines since licenses for these machines are subject to a cap and the machines cannot be licensed by new owners." (Compl. ¶ 30 (emphasis added).) As Defendants argued, if Plaintiffs are unable to invest a new location on Saipan, they are still able to use their licenses on the other two islands of Rota and Tinian. Furthermore, even if there is a cap imposed on the number of licenses for poker machines, Plaintiffs have failed to demonstrate why they would be unable to obtain or renew their licenses within the cap. In other words, Plaintiffs fail even to allege that the cap has been filled and it will never be unfilled in the future.

Because the zoning law has yet to be enforced, there is no history of prosecution for the Court to consider. For these reasons, the Court finds that the constitutional prong of the ripeness inquiry is not satisfied because any threat of enforcement on the Plaintiffs is speculative at best at this time. *See Davis v. Commonwealth Election Comm'n*, 990 F. Supp. 2d 1089, 1098 (D. N. Mar. I. 2012) (constitutional claim was not ripe for review because a ballot initiative, while likely to be submitted, was not inevitable).

Separately, Plaintiffs have also not established that the Commonwealth Department of Finance, which issues the business licenses, has threatened to revoke or is in the process of revoking their business licenses. They have identified no regulations, policy, or practice of the Department to suggest that a business license will be denied if Plaintiffs continue to operate the poker machines in a nonconforming zone while they seek an extension from the Zoning Board. Accordingly, the constitutional part of the ripeness inquiry has not been satisfied with respect to the alleged deprivation of the business licenses.

### *Prudential Prong*

Even if the constitutional prong were met, Plaintiffs cannot satisfy the prudential inquiry for the poker machine licenses or business licenses. Specifically, Plaintiffs cannot establish hardship from lack of judicial review at this juncture. There has been no immediate threat of enforcement of the zoning law or threat to revoke the licenses, and Plaintiffs have even requested an extension of their ability to operate in a nonconforming area while they search for a new property in a conforming zone. Further, even though losing a visa may be a hardship, Nam has made no allegation that lack of judicial review at this time will result in a "direct and immediate" loss of the visa. The verified complaint

10

notes only that "[u]nless Mr. Nam invests in and incurs these costs, he will be in violation of the conditions with which he is obligated to comply under as an E-2c investor," and "[a]s a result, his immigration status will be compromised." (Comp. ¶ 57.) It may be true that Nam must incur these financial costs to maintain his investor status, but hardship cannot be solely financial, as set forth above, and he has made no allegation that the U.S. Government has already attempted or threatened to revoke his investor visa. Thus, Nam is unable to demonstrate a direct and immediate hardship resulting from lack of judicial review at this time.

Additionally, because the Zoning Board has not yet made a decision about whether to grant Plaintiffs an extension, issuing a preliminary injunction would potentially decide the constitutional issue prematurely or unnecessarily, and would also interfere with an ongoing administrative process. In other words, finding this case to be ripe for review would be contrary to two central purposes of the ripeness doctrine: "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Ass'n of Am. Medical Colleges v. United States*, 217 F.3d 770, 779 (9th Cir. 2000).

In sum, Plaintiffs' claim that the zoning laws deprive them of their constitutionally protected property is unripe. Therefore, Plaintiffs have no likelihood of succeeding on the merits. Further, ripeness is "determinative of jurisdiction," and when a claim is unripe, the court "lack[s] subject matter jurisdiction and the complaint must be dismissed." *W. Linn Corporate Park L.L.C. v. City of W. Linn*, 534 F.3d 1091, 1099 (9th Cir. 2008) (quoting *S. Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d

11

498, 502 (9th Cir. 1990)). Accordingly, Plaintiffs' motion for a TRO or preliminary injunction must be denied, and the complaint must be dismissed for lack of jurisdiction. Furthermore, because the Court concludes that Plaintiff's claims are unripe, it will not address any of Defendants' remaining arguments.

## V.  CONCLUSION

For the reasons set forth above, Plaintiffs' request for a TRO and preliminary injunction (ECF No. 2-1) is DENIED, and Defendants' motion to dismiss (ECF No. 10) is GRANTED.

It is further ORDERED that the complaint be DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated this 4th day of December, 2017.

R<span>AMONA</span> V. M<span>ANGLONA</span>
Chief Judge